IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

FREDERICK WASHINGTON                                                                          PLAINTIFF

V.                                                              CIVIL ACTION NO. 1:15cv124-SA-DAS

CITY OF NETTLETON,
JIMMY TAYLOR and
A.D. HEARD, *in their individual capacities*                                                  DEFENDANTS

MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for Summary Judgment [46]. Plaintiff filed his response [53], alleging that Defendant Nettleton discriminated and retaliated against Plaintiff in violation of Title VII. Plaintiff further alleges that Defendants Heard and Taylor, in their individual capacity, have violated Plaintiff's First Amendment rights. Finally, Plaintiff advances a claim of denial of equal protection based on his race in violation of the Fourteenth Amendment against Defendant Taylor, also in his individual capacity. Defendants have jointly replied, asserting defenses including qualified immunity [58].

*Factual and Procedural Background*

Upon recommendation by Police Chief A.D. Heard, Frederick Washington was hired as a full time police officer for the City of Nettleton in July 2013. Washington was promoted as the City's Assistant Chief that September, again upon recommendation by Chief Heard. Defendants allege that this appointment was for a probationary period.

In November of that year, Washington complained to Chief Heard regarding an officer named Phillip Smith. Washington reported that Officer Smith, who is white, was missing his shifts without notice or excuse. Washington raised concerns regarding Officer Smith's fitness for duty based on concerns that he was not dependable.

Washington, who is black, believes that in retaliation for this report, Officer Smith began spreading rumors to the Sheriff and others about Washington's prior employment. Among other things, Officer Smith allegedly said that Washington had a sexual affair with a white parolee while he was employed by the MDOC in Pontotoc, Mississippi.

In response to the rumors, The Mayor of Nettleton, Jimmy Taylor, investigated the allegations. He first called Lee County Sheriff Johnson, who had no information. Sheriff Jim Johnson, however, referred Mayor Taylor to Pontotoc County Sheriff Mask. Sheriff Mask was also unable to confirm, but he said that the other Pontotoc officers had teased Washington regarding his inability to "get sex," and they joked that he would only be able to do so with his female parolees. However, Sheriff Mask did not have information regarding any specific occurrences involving any specific parolee.

After this investigation proved fruitless, in talking with Chief Heard, Mayor Taylor referred to Washington as Sheriff Johnson's "boy," allegedly because Sheriff Johnson was unable to report specific negative information regarding Washington's supposed affair. Chief Heard told Washington about this, and that Mayor Taylor was frustrated by the lack of negative information. Chief Heard also told Washington that Sheriff Johnson wanted Washington fired for "messing with a white girl."

According to Defendants, Chief Heard met with Mayor Taylor and Nettleton's City Clerk, Dana Burcham, on November 22, 2013, and the three discussed firing Washington. During the meeting, Mayor Taylor and Burcham told Chief Heard that other officers feared Washington. They had heard that Washington was discussing his work problems with certain citizens of Nettleton, and that Washington planned to hire a lawyer. Chief Heard allegedly told Washington about this conversation the next day, and he advised him to keep his "mouth shut" in

the future. However, on November 26, Washington delivered a letter addressed to Mayor Taylor, with copies given to Chief Heard and Burcham. The letter alleged that the accusations of "messing with a white girl" and calling Washington the Sherriff's "boy" were racially discriminatory, and it asked Mayor Taylor to cease violating Washington's federally protected rights.

Later that day, Washington was forced to end his shift early, and that afternoon, a special meeting of the City of Nettleton Board of Aldermen was called. At the meeting, Chief Heard recommended to the Board of Aldermen that Washington be fired. There is disagreement regarding the reasons given for the termination in the meeting. Mayor Taylor alleges that Chief Heard cited "poor performance," while Chief Heard says that he recommended that Washington be fired for "undermining his position." Burcham merely remembers that Chief Heard simply stated that he recommended that Washington be terminated and then the Board voted, without a full discussion of the reasons. However, within the meeting Minutes, the reason recorded for termination was "Fred Washington was a probationary employee." The day after the Board meeting, Washington was informed of his termination. When he returned his equipment to the police station, he noticed that Officer Smith was working his shift. Washington believes that Mayor Taylor had led a charge to terminate Washington, but that the decision was ultimately made in retaliation for the letter he wrote regarding the allegations of racism, violations of rights and the unfair treatment he received in comparison with Officer Smith.

After he was fired, Washington filed for unemployment benefits with the Mississippi Department of Employment Security ("MDES"). In response to the filing, Burcham submitted a form stating that "[e]mployee was fired as a probationary employee." The MDES awarded benefits, and the City of Nettleton appealed the decision. A hearing was held, wherein Burcham

testified that Washington was a probationary hire, and that he had been fired based upon Chief Heard's recommendation. However, Burcham also testified that though Washington "could not perform job duties," he had not violated policy and did not commit misconduct. Washington testified that he was never given a reason for his firing, and he was never told to appear before the Board. The decision to award benefits was upheld because the "employer admitted the claimant did not commit misconduct."

Washington filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 5, 2015. After the EEOC issued its Dismissal and Notice of Rights, Mr. Washington made a Freedom of Information Act ("FOIA") request for the EEOC investigative file. Upon receipt of the investigative file, Washington saw, allegedly for the first time, four write-ups used by the Defendant Nettleton to justify firing him. Subsequent to receiving a right to sue letter, Washington filed the complaint in this case.

Washington names as Defendants the City of Nettleton, along with Mayor Taylor and Chief Heard, in their individual capacities only. As against the City, Washington advances two claims: race discrimination and retaliation, both in violation of Title VII, 42 U.S.C. §§ 2000e-1 to 2000e-17. With respect to Mayor Taylor, Washington advances a claim for denial of equal protection based on his race in violation of the Fourteenth Amendment. As to both Mayor Taylor and Chief Heard, Washington advances a claim for retaliation in violation of the First Amendment.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Rule

"mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when ... both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

Plaintiff brings claims of race discrimination and retaliation against the City pursuant to Title VII. Additionally, pursuant to Section 1983, Plaintiff advances a claim for denial of equal protection based on his race in violation of the Fourteenth Amendment against Defendant Mayor Taylor, individually. To succeed on a claim for racial discrimination under Title VII or Section

1983, a plaintiff may show a *prima facie* case either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *Larry v. White*, 929 F. 2d 206, 209 (5th Cir. 1991) (plaintiff must prove racially discriminatory purpose of act to demonstrate Section 1981 or Section 1983 violation), *cert. denied*, 507 U.S. 1051, 113 S. Ct. 1946, 123 L. Ed. 2d 651 (1993); *see also Lee v. Conecuh Cty. Bd. of Ed.*, 634 F. 2d 959, 961–62 (5th Cir. 1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In response to Plaintiff's equal protection claim, defendants have asserted that they are qualifiedly immune from suit. The merits of this defense are addressed in the final section of this opinion.

To show a prima facie case, a plaintiff must first establish that he (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for his position, and (4) was replaced by someone outside of the protected class or that similarly situated employees of a different race were treated more favorably. *Turner v. Baylor Richardson Med. Ctr.*, 476 F. 3d 337, 345 (5th Cir. 2007).

If a plaintiff establishes a presumption of discrimination by establishing a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

If the employer sustains its burden, the *prima facie* case is dissolved, and a plaintiff asserting discrimination must establish either: (1) that the employer's proffered reason is not true

but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

*Discrimination Claims Under Title VII and Equal Protection*

Plaintiff alleges that Defendant Mayor Taylor's remarks accusing Washington of "messing with a white girl" and being the Sheriff's "boy" constitute direct evidence of discrimination. Defendants deny that such comments were made in this context. However, because this case is before us on summary judgment review, we are required to view the evidence in the light most favorable to Plaintiff, taking the record evidence and all reasonable inferences therefrom in his favor. *Moore v. Willis Indep. Sch. Dist.*, 233 F. 3d 871, 874 (5th Cir. 2000).

In order for comments to constitute direct evidence, they must, among other things, be made by an individual with authority over the employment decision at issue and be "related to the employment decision at issue." *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996). "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Brown v. E. Mississippi Elec. Power Ass'n*, 989 F. 2d 858, 861 (5th Cir. 1993).

However, in the case at bar, the Board of Aldermen had the ultimate authority to terminate Plaintiff, not Mayor Taylor. In order to consider these comments direct evidence, the trier of fact would have to infer that Defendant Mayor Taylor could control the Board. This inference would be improper under this standard. Therefore, Plaintiff must make his prima facie case using the *McDonnell-Douglas* framework for circumstantial evidence.

Using Defendant Mayor Taylor's comments to bolster his case, Plaintiff can show the first three elements of his prima face case for race discrimination. He was a qualified member of a protected class who suffered an adverse employment decision. Nevertheless, Defendants allege that Plaintiff cannot meet the fourth prong, as he was not "replaced by someone outside his protected class or was treated less favorably than other similarly situated employees outside the protected class." *Turner*, 476 F.3d at 345. Defendants argue that though Plaintiff's shift may have been covered by a white officer on the day he was terminated, Plaintiff was ultimately replaced by an African American officer as Assistant Chief.

To prove that he was replaced by someone outside his protected class, "plaintiff must develop a record to show that a purported replacement actually performed the plaintiff's duties." *Hawkins v. Ceco Corp.*, 883 F.2d 977, 982 (11th Cir. 1989) (citing *Jones v. Western Geophysical Co. of America*, 669 F.2d 280 (5th Cir. 1982)). Even if Officer Smith covered Plaintiff's shift on the day he was terminated, Plaintiff has not developed a record which would show that Officer Smith actually performed Plaintiff's duties as Assistant Chief.

However, it is well settled that, although replacement with a non-member of the protected class is evidence of discriminatory intent, it is not essential to the establishment of a discrimination claim. *See Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir. 1985) ("This court has previously held that the single fact that a plaintiff is replaced by someone within the protected class does not negate the possibility that the discharge was motivated for discriminatory reasons"). Accordingly, that Plaintiff may not have established that he was replaced by a white officer does not necessarily mean that he failed to establish his *prima facie* case. Nevertheless, Plaintiff is required instead to illustrate that the misconduct for which the Plaintiff was discharged was nearly identical to the misconduct engaged in by other employees.

*See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). Plaintiff alleges that Officer Smith, who is a person of a different race who was "similarly situated" was treated more favorably. Though he often did not show up for work without excuse, Officer Smith maintained his position and even took over some of Plaintiff's job duties after he left. Thus, as a similarly situated employee outside of Plaintiff's racial class, Officer Smith may have been treated more leniently.

The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Defendants assert several performance issues in regards to Plaintiff's role as Assistant Chief. Defendant Chief Heard testified that he had received complaints that Plaintiff was propositioning women he had pulled over for traffic stops. Also, Defendant Chief Heard believed Plaintiff was undermining his authority by telling people Plaintiff was the real chief, that Plaintiff had worn the Chief's rank insignia without the Chief's knowledge, and that Plaintiff parked for long periods of time outside a female's house while on duty. Also, Chief Heard alleges that he decided to recommend Washington's termination well before receipt of the November 26th letter. According to Defendants, this is why the board unanimously voted to terminate Plaintiff on November 26. Finally, the same Board of Aldermen was in place for Plaintiff's appointment to Assistant Chief on September 25th as was in place for his termination on November 26. Defendants assert that these legitimate, nondiscriminatory reasons for termination show that they were not discriminatory.

Thus, the burden shifts back to Plaintiff to show that the proffered reasons are not true, and are simply pretext for discrimination, or that the employer's discriminatory motive "was a motivating factor" in the adverse employment decision. *Alvarado*, 492 F.3d at 611 (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Plaintiff relies on discrepancies in the

record regarding Defendants inconsistent use of alleged reasons for termination to show pretext, as well as a "cat's paw" argument to show causation.

Plaintiff questions his purported misconduct by pointing out several inconsistencies in the Defendants' recount of events. First, though Defendant Heard testified during depositions that he reported the write-ups to the Board, Burcham, who was also present at the Board meeting, testified that she was not aware of any write-ups or misconduct until the EEOC investigation. Plaintiff also was unaware of any formal warnings regarding his purported misconduct until he saw the write-ups after the EEOC investigation. Next, Plaintiff claims that Mayor Taylor testified that the write-ups purportedly prepared prior to Plaintiff's termination and submitted to the EEOC by the Defendant Nettleton were not the same write-ups the Defendant Heard showed Defendant Mayor Taylor before Plaintiff was fired. Furthermore, Defendant Mayor Taylor had not signed the write-ups, as is standard procedure. Therefore, Plaintiff questions when the write-ups were created and their legitimacy.

Second, during the MDES hearing, "employer admitted the claimant did not commit misconduct." Plaintiff questions how it is possible that there was no misconduct if write-ups reporting misconduct were already in existence. Third, Plaintiff cites to a perceived contradiction between Defendant Chief Heard's recommendations of Plaintiff and his choice to recommend termination. Plaintiff blames the lack of explanation on Defendant Mayor Taylor's influence over Defendant Chief Heard. Finally, Washington points to the Mississippi Peace Officer Standards and Training Termination/Reassignment Report regarding the termination. In this report, Defendant Chief Heard cited, "[t]erminated-fail to meet standards while on probation" as the reason for Washington's termination, even though he now claims specific bad acts. Washington believes that these inconsistencies call into question the legitimacy of the write-ups

and whether there was legitimate cause for termination. Plaintiff alleges that as in *Goudeau v. National Oilwell Varco, L.P.*, the "doubts that [plaintiff] has raised about the warnings, combined with the [race based] comments that are potentially corroborated by the firing of [plaintiff], would allow a jury to conclude that [race] was the reason for the termination. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015). Therefore, Plaintiff has alleged that the reasons posed by Defendants are mere pretext for their race based actions.

Conversely, Defendants assert that pursuant to the "same actor inference," Plaintiff is unable to show that their proffered reasons for his termination were pretextual. Indeed, the Fifth Circuit has recognized that it "hardly makes sense for an employer to hire employees from a group against which [the employer] bears racial animus and then turn around and fire them once they are on the job." *Hervey v. Miss. Dep't of Educ.*, 404 F. App'x 865, 871 (5th Cir. 2010); *see also Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)). This "same-actor inference" requires a plaintiff to come forward with more than a tenuous inference of pretext to meet his burden of proof. *Anderson v. Miss. Baptist Med. Ctr.*, 2011 U.S. Dist. LEXIS 92656, 2011 WL 3652210, *3 n. 4 (S.D. Miss. Aug. 18, 2011). Additionally, Defendants assert that there is no evidence the Board relied in any way on Defendant Mayor Taylor when it voted to terminate Washington's employment. Therefore, Defendants assert that animus may not be imputed to Defendant Chief Heard or the Board via a "cat's paw" theory.

Plaintiff has alleged that by influencing Chief Heard, Mayor Taylor was able to indirectly influence the Board's decision to terminate him. This argument invokes the "cat's paw" analysis. "[T]he cat's paw theory typically applies where the ultimate decisionmaker, the superior, relies on evidence or advice from a subordinate who harbors discriminatory animus." *Roque v. Natchitoches Par. Sch. Bd.*, 583 F. App'x 466, 470 (5th Cir. 2014) (Jolly, J. concurring) (citing

11

*Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.*, 719 F. 3d 356, 366 n.11 (5th Cir. 2013)) (citing *Staub v. Proctor Hospital*, 562 U.S. 411, 420, 131 S. Ct. 1186, 1193, 179 L. Ed. 2d 144 (2011) (stating that an "employer is at fault [when] one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment action.")) If Defendant Taylor, as Mayor of Nettleton, indirectly intervened in the Board's decision, it follows that the people who hired the Plaintiff were not the same people who caused Plaintiff to suffer discrimination, but instead merely a potential "cat's paw" for the person truly responsible. If the Board merely relied on the assessment of its Chief of Police, who had been influenced by the Defendant Mayor Taylor, this inference may not be dispositive.

The Court finds that Plaintiff has sufficiently shown that a genuine issue of material fact exists as to whether Defendant Mayor Taylor had leverage over Chief Heard, thereby effectuating the Board's decision to terminate indirectly. Additionally, whether Plaintiff committed misconduct, and whether it had been reported before or after the investigations is question of fact to be left to a juror. "Where the 'examples' first given have proven illegitimate, a jury could reasonably infer that the shift in explanation is significant" evidence of pretext. *See Burton v. Freescale Semiconductor, Inc.*, 798 F. 3d 222, 239 (5th Cir. 2015). Accordingly, Plaintiff has raised a material question as to whether the list of performance issues was pretext for his termination, and his discrimination claim must proceed to trial.

*Title VII Retaliation claim*

In Title VII retaliation claims, "to establish causation under a cat's paw theory, [Plaintiff] must produce sufficient evidence that (1) his supervisor, motivated by retaliatory animus, took acts intended to cause an adverse employment action; and (2) those acts were a but-

for cause of" the adverse employment action. *Zamora v. City of Houston*, 798 F.3d 326, 331–32 (5th Cir. 2015), *cert. denied sub nom*, *City of Houston, Tex. v. Zamora*, 136 S. Ct. 2009, 195 L. Ed. 2d 215 (2016). The applicable standard of causation is heightened in retaliation claims— instead of being a proximate cause, the supervisor's act must be a "[but-for] cause of the ultimate employment action." *See Zamora*, 798 F.3d at 332 (replacing "motivating factor" with "but-for" in applying cat's paw analysis post-*Nassar*); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, --- U.S. ---, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013); *see also Staub*, 562 U.S. at 422, 131 S. Ct. 1186.

Defendants assert that though Plaintiff may have engaged in protected activity, there is no causal nexus between the delivery of the letter and the City's decision to terminate his employment because Defendant Chief Heard had already decided to recommend his termination before the letter was delivered for different reasons. However, "[c]lose timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a *prima facie* case of retaliation." *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x. 447, 454 (5th Cir. 2013) (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)). When temporal proximity is the only evidence of causation, the proximity must be "very close." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F. 3d 450, 454 (5th Cir. 2013) (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)).

Plaintiff delivered a letter wherein he alleged racial discrimination to his supervisor at 12:00 p.m. Within two hours, Defendant Chief Heard asked him to return to the station where he was asked to clock out for the remainder of his shift. At 4:30 p.m. that day, Defendant Chief Heard met with the Board, who terminated Plaintiff. Therefore, the Court finds that the Plaintiff

has raised questions of material fact as to whether Defendant Chief Heard was retaliatory when he recommended termination, and whether this retaliatory animus may be imputed to the Board.

*Section 1983 Claims against Mayor Taylor and Chief Heard*

As noted, Plaintiff advanced his equal protection claim against Defendant Mayor Taylor, individually pursuant to Section 1983. Plaintiff also poses claims for retaliation in violation of the First Amendment against Defendants Mayor Taylor and Chief Heard in their individual capacities in accordance with Section 1983. In response, both Defendants have alleged that they are entitled to qualified immunity regarding all Section 1983 claims.

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011). "Under this doctrine, courts may not award damages against a government official in his personal capacity unless 'the official violated a statutory or constitutional right,' and 'the right was 'clearly established' at the time of the challenged conduct.'" *Lane v. Franks*, --- U.S. ---, 134 S. Ct. 2369, 2381, 189 L. Ed. 2d 312 (2014) (quoting *al–Kidd*, 563 U.S. 731, 743, 131 S. Ct. at 2085). A court has discretion to decide which of these two prongs to consider first. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). Regarding the second prong of qualified immunity analysis, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, ---U.S. ---, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014). Once a defendant properly invokes the defense of qualified immunity, the plaintiff bears the burden of proving that the defendant is not entitled to the doctrine's protection. *See Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir.

2005). Plaintiff has not carried its burden to show that Defendants are not entitled to qualified immunity on either 1983 claim.

Defendants have argued that because the individual Defendants were not the final decision makers regarding Plaintiff's termination, they cannot be liable on either the Equal Protection Claim or the First Amendment retaliation claims. Conversely, Plaintiff alleges that even if they were not the final decision makers, Defendants were the "moving force" behind Plaintiff's termination. Plaintiff alleges that his "cat's paw" analysis applies equally to his 1983 retaliation and Equal Protection Claims as it does to his Title VII claims.

Very recent Fifth Circuit precedents, "at minimum, cast uncertainty on the proposition that an individual must be the actual 'final decision maker' to be held liable in an individual capacity for a First Amendment retaliation." *See Howell v. Town of Ball*, 827 F.3d 515, 526 (5th Cir. 2016) (quoting *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009)); *see also Culbertson v. Lykos*, 790 F.3d 608, 625–26 (5th Cir. 2015). However, at the very least, as late as 2015 "[i]t was unsettled . . . whether someone who is not a final decision-maker and makes a recommendation that leads to the plaintiff being harmed can be liable for retaliation under Section 1983." *Culbertson*, 790 F.3d at 627; *see also Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001). Because in 2013, when the individual Defendants acted, the law was not clearly established that giving a recommendation to those with authority to terminate would violate a Plaintiff's Constitutional rights, qualified immunity precludes the 1983 relief for First Amendment Retaliation that Plaintiff seeks against the individual Defendants.

This conclusion applies equally in Plaintiff's 1983 claims for denial of Equal Protection, for it is likewise fundamental that the contours of the right be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."

15

*Plumhoff*, 134 S. Ct. at 2023. Plaintiff has not provided any case law that would suggest that an official who was not the decisionmaker may be held liable for a Constitutional violation of Equal Protection under a cat's paw theory. Indeed, very recently, other District Courts within the Fifth Circuit have squarely ruled against finding Section 1983 liability when the defendant is not the final decisionmaker, but rather a Board of Aldermen made the decision. *See Owens v. City of Flowood, Miss. et al.*, Case No. 3:16-cv-00451 (S.D. Miss. Jan. 23, 2017).

Furthermore, though the burden shifting analysis used in Title VII is an effective tool to determine discrimination in Equal Protection Claims, the overarching concern of Equal Protection is that persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). Plaintiffs must show that "the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272–74, 99 S. Ct. 2282, 60 L. Ed.2d 870 (1979); *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 239–42, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976). "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the *decisionmaker* . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279, 99 S. Ct. 2282 (emphasis added). The Plaintiff's arguments fail to show that Defendant Mayor Taylor was a *decisionmaker* at all. Thus, Plaintiff has not met his burden regarding qualified immunity to proceed on either 1983 claim.

*Conclusion*

Plaintiff's claims against Defendant City of Nettleton for Title VII discrimination and retaliation must proceed to trial, for there is a substantial question of material fact regarding

whether Mayor Taylor's discriminatory animus and Chief Heard's retaliatory animus may be imputed to the Board of Aldermen. However, Plaintiff's Section 1983 claims against individual defendants Chief Heard and Mayor Taylor for both First Amendment retaliation and Equal Protection are hereby dismissed, as Defendants are entitled to qualified immunity. Therefore, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

SO ORDERED this 6th day of March, 2017.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE